IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROL CASTILLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. __________ |
| | § | |
| UNITED AIRLINES, INC., | § | |
| | § | |
| Defendant. | § | |

# **PLAINTIFF'S COMPLAINT**

Plaintiff Carol Castillo ("Castillo" or "Plaintiff") files this Complaint against United Airlines, Inc. ("United" or "Defendant"), showing as follows:

## **Introduction and Summary**

1. This is a lawsuit to recover damages from Defendant for its violations of (1) the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq*.; and (2) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., as amended by the ADA Amendments Act of 2008 ("ADAAA").

2. Plaintiff is a veteran of the U.S. Marine Corps. She suffers from migraines, and effective June 15, 2010, she received a permanent 50% disability rating from the U.S. Department of Veterans Affairs.

3. She began working for United on June 21, 2012, as a Flight Attendant.

4. In the spring of 2015, after receiving discipline for being out sick too much with migraines, Plaintiff applied for and received intermittent FMLA leave for her migraines. For a few months afterwards, United allowed Plaintiff to take intermittent leave as permitted by the law when she suffered from migraines.

5. On July 27, 2015, while at the airport and on call, Plaintiff began suffering a migraine that prevented her from performing her duties.

6. Even though she was already approved to take leave at the instant she in good faith reported a migraine headache that prevented her from working, United required her to speak to a supervisor, write a statement, and then later unlawfully terminated her employment.

7. By terminating her employment, United violated the FMLA's interference and retaliation provisions and the ADA, as amended.

**The Parties, Jurisdiction, and Venue**

8. The Plaintiff, Carol Castillo, is a natural person residing in Kingwood, Texas. She has standing to file this lawsuit.

9. Defendant United may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

10. The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

11. The Court has subject matter jurisdiction over this case based on federal question jurisdiction.

12. Venue is appropriate because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and the unlawful employment practices alleged in this case occurred in this district. 28 U.S.C. § 1391(b).

**Factual Background**

13. Plaintiff is a veteran of the U.S. Marine Corps.

14. Plaintiff suffers from migraines, and effective June 15, 2010, she received a permanent 50% disability rating from the U.S. Department of Veterans Affairs.

15. Plaintiff's disability rating is the highest permitted under law.

16. On June 21, 2012, Plaintiff began employment as a Flight Attendant for United.

17. On January 26, 2015, United gave Plaintiff a 9H Letter and had a "Documented Conversation" about her attendance during the past twelve months, noting sick calls on September 16-24, 2014, November 3, 2014, and December 31, 2014 - January 5, 2015.

18. On April 11, 2015, United again had a "Documented Conversation" with Plaintiff about her attendance, noting three "Sick After Assignment" instances in March 2015 and one "Short Notice Sick Call."

19. During her "documented conversation," Plaintiff informed Veronica Hauser, International Airport of Houston ("IAH") Inflight Supervisor, that "she suffers from migraine headaches. FML was discussed and Carol has provided a doctor's note from her last sick call."

20. United then issued Plaintiff a "Verbal Warning" for Dependability.

21. Plaintiff had applied for intermittent FMLA leave, and was requested by United to resubmit her FMLA intermittent leave request. In April 2015, she was approved for intermittent leave due to her "chronic migraines."

22. At the time of her approval, Castillo was an eligible employee under the FMLA and United was an eligible employer.

23. Castillo had worked at least 1,250 hours in the twelve months before requesting FMLA leave.

24. For the next few months, she took intermittent FMLA leave when it was required, although it was frowned upon at United.

25. Plaintiff had occasional doctor appointments to receive treatment for her migraines, where she was injected with Botox, which helped alleviate and mitigate the symptoms and severity of her migraine headaches.

26. Because United frowned upon her missing work, Castillo missed a doctor's appointment at the Michael E. DeBakey VA Medical Center on July 14, 2015, at 10:30 a.m. As she missed her treatment to attend work, this made her potentially vulnerable to migraine headaches as explained in the previous paragraph.

27. On July 27, 2015, Plaintiff was on "Airport Alert" at IAH, essentially waiting to see if she would be placed on a trip. She was informed that she would be placed on a flight to Lagos, Nigeria. The trip would have extended into Plaintiff's scheduled "off" days.

28. A few minutes later, Plaintiff felt a migraine coming on, and reported it to United. The migraine caused her to experience some vomiting. An Inflight Supervisor demanded that she provide a written account of her actions and to seek medical attention if she was too sick to go on the trip. While going through a migraine episode, Plaintiff wrote out a statement explaining that she had a migraine and had been vomiting in the restroom.

29. She met about the incident with United on August 4, 10, and 21, 2015.

30. On August 4, 2015, she supplemented her statement to indicate that she had taken prescription medication on July 27 while in the restroom.

31. On August 25, 2015, United, by way of Kara Eccleston, Supervisor of Inflight Services, terminated the Plaintiff effective August 21, 2015, essentially claiming that Plaintiff was untruthful about her migraine on July 27, 2015.

32. Plaintiff subsequently filed for unemployment benefits, which United contested. Ultimately, an Appeal Tribunal of the Texas Workforce Commission made the following findings of fact and conclusions:

> In the present case, the employer believed that the claimant faked having a migraine on July 27, 2015, for the purpose of avoiding a flight to Nigeria, thereby abusing sick leave and refusing a trip. However, the employer offered no evidence to corroborate its allegation. Supporting evidence of the employer's

> suspicion would be necessary to overcome the claimant's sworn denial of wrongdoing, especially considering the fact that the claimant was on approved intermittent leave under the FMLA for the very same condition that she alleged cause her inability to make the flight on July 27, 2015. Therefore, because the claimant's last absence from work, on July 27, 2015, was the result of personal illness, and because the claimant notified the employer of the absence within minutes of becoming ill, which was as much notice as possible under the circumstances, the Appeal Tribunal must conclude … that the claimant's discharge was not the result of misconduct connected with work.

33. On October 8, 2015, Plaintiff filed a Charge of Discrimination with the EEOC, alleging discrimination on the basis of disability. A Notice of Right to Sue letter was issued by the EEOC on December 23, 2015.

34. This lawsuit falls within two years of Plaintiff's termination and within 90 days of Plaintiff's receipt of the Notice of Right to Sue letter.

## Plaintiff's Claims

### I. FMLA Interference & Retaliation

35. The FMLA was enacted to permit employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition. 29 U.S.C. § 2601(b)(2). Congress enacted the FMLA in response to concern over "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." *Miller v. AT & T Corp.*, 250 F.3d 820, 833 (4th Cir. 2001) (internal quotations omitted).

36. "The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (citing *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir.1999); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir.1998)). The first set of provisions are prescriptive: they create a series of substantive rights, namely, the right to take up to twelve weeks of unpaid leave under certain

circumstances. *Id*. The second set of provisions are proscriptive: they bar employers from penalizing employees and other individuals for exercising their rights. *Id*.; see also 29 U.S.C. § 2615(a)(1)-(2); *Chaffin v. John H. Carter Co*., 179 F.3d 316, 319 (5th Cir. 1999); *Bocalbos*, 162 F.3d at 383 ("[T]he Act protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights.") (citations omitted); *Faris v. Williams WPC-I, Inc*., 332 F.3d 316, 320-22 (5th Cir. 2003) (holding that there is a distinction between substantive FMLA rights and causes of action for retaliation designed to protect those rights).

37. As set forth below, Defendant violated both the FMLA's anti-interference and anti-retaliation provisions.

**A. FMLA Interference**

38. Under 29 U.S.C. § 2615(a)(1), an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the Act. *Nero v. Industrial Molding Corp*., 167 F.3d 921, 927 (5th Cir. 1999). At a minimum, a Plaintiff "must at least show that [the employer] interfered with, restrained, or denied [his] exercise or attempt to exercise FMLA rights, and that the violation prejudiced [him]." *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013).

39. "In order to state a prima facie case of interference under the FMLA, an employee must demonstrate only that she was entitled to a benefit that was denied." *Anderson v. New Orleans Jazz & Heritage Festival & Found., Inc.*, 464 F. Supp. 2d 562, 567 (E.D. La. 2006) (citing *Strickland v. Water Works & Sewer Board,* 239 F.3d 1199, 1206-07 (11th Cir. 2001) (citing *O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1353-54 (11th Cir. 2000); *King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir.1999)). "Other federal courts have required a plaintiff in FMLA interference cases to establish five elements." *Id.* (internal citations omitted).

40. Those five elements are: "(1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled." *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)); *Sista v. CDC Ixis N. Am.*, 445 F.3d 161, 167-68 (2d Cir. 2006); *Garraway v. Solomon R. Guggenheim Found.*, 415 F.Supp.2d 377, 382 (S.D.N.Y. 2006); *Morgan v. Neiman Marcus*, No. 3:05-CV0079-G, 2005 WL 3500314, at *4 (N.D. Tex. Dec. 20, 2005). Plaintiff fulfills all five elements.

41. **First element**. At all times in 2015, Plaintiff was eligible for FMLA leave. 29 U.S.C. § 2611(2)(A).

42. **Second element**. At all times in 2015, Defendant was a "covered employer" under the FMLA, because Defendant did "employ 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(I).

43. **Third element.** Plaintiff was entitled to take leave under the FMLA because she has a "serious health condition" as defined by the FMLA. The FMLA allows eligible employees 12 weeks of unpaid leave each year for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* § 2611(11). Ms.

Castillo's migraine condition fits at the definitions of "serious health condition" under the FMLA.

44. **Fourth Element.** The FMLA's notice requirements "are not onerous" and are satisfied when an employee provides her employer with information sufficient to show that she "likely has an FMLA-qualifying condition." *Burnett v. LFW, Inc*., 472 F.3d 471, 477 (7th Cir. 2006) (stating that notice is sufficient when employee provides employer with probable basis that FMLA leave applies). Here, Plaintiff gave United adequate notice of her need for FMLA leave, including a written statement on July 27, 2015, indicating that she needed leave for a migraine.

45. **Fifth Element.** Once an employee puts an employer on notice of a probable basis for FMLA leave, the duty shifts to the employer to request any information necessary to confirm the employee's entitlement to that leave. 29 C.F.R. § 825.301(a). This is so because, as the Fifth Circuit has correctly observed, "the FMLA [is] a statute that requires cooperation from the employer *and* the employee. After all, the ultimate underlying purpose of the FMLA is to accommodate a particular medical circumstance." *Mauder v. Metropolitan Transit Authority of Harris County, Texas*, 446 F.3d 574, 582 (5th Cir. 2006) (emphasis in original, footnote omitted). Here, United failed to confirm or deny the applicability of leave, and instead terminated Plaintiff's employment.

46. **Conclusion on FMLA Interference.** United's termination of Plaintiff constitutes a clear violation of the FMLA. *See, e.g., Ladner v. Hancock Medical Center*, 299 Fed. Appx. 380, 381 (5th Cir. Nov. 12, 2008) (affirming verdict for plaintiff in FMLA case, rejecting employer's claim that it lacked sufficient notice to trigger FMLA rights, and finding instead that there was sufficient evidence to show that the plaintiff's son was incapacitated due to a serious

health condition, and that employer had notice of the serious health condition); *Manuel v. Westlake Polymers Corp*., 66 F.3d 758, 764 (5th Cir. 1995) (holding that employee who gave notice of the need for unforeseeable FMLA leave provided sufficient notice to create a jury question on whether his notice triggered FMLA protection).

**B. FMLA Retaliation**

47. 29 U.S.C. § 2615(a)(2) of the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." § 2615(a)(2). To make out a *prima facie* case for retaliation under § 2615(a)(2), a plaintiff must show that: "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt*, 277 F.3d at 768 (citation omitted).

48. If this initial burden is met, the employer-defendant must then articulate a legitimate reason for the employment action. *Hunt*, 277 F.3d at 768. If that is done, the employee must then show that the articulated reason was actually a pretext for retaliation. *Id*. The plaintiff need not prove that the exercise of FMLA rights was the sole cause of the unfavorable treatment; "[t]he plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated." *Mauder*, 446 F.3d at 583.

49. Here, Plaintiff put United on notice of her need for FMLA leave and was fired shortly thereafter because United falsely claimed Plaintiff was untruthful. United's articulated reason for termination is not legitimate because (among other reasons), United knew Plaintiff had a history of migraines, knew that she had been under a stressful event, and had already been pre-approved for FMLA leave when she reported a migraine. This was nothing more than a false pretext to terminate her employment.

50. United's reason for termination is a mere pretext to retaliate against Ms. Castillo for taking time off because of a serious health condition as is authorized by the FMLA. *See, e.g., Bryant v. Dollar General Corp*., 538 F.3d 394 (6th Cir. 2008) (affirming jury verdict in FMLA retaliation case and holding that the FMLA prohibits employers from retaliating against employees for taking FMLA-covered leave); *Hite v. Vermeer Manufacturing Company*, 446 F.3d 858, 866 (8th Cir. 2006) (same); *Cline v. Wal-Mart Stores, Inc*., 144 F.3d 294 (4th Cir. 1998) (affirming jury's liability finding against Wal-Mart for violating the FMLA).

**II. Disability Discrimination Under The Americans With Disability Act, As Amended**

51. Plaintiff suffers from a known disability – migraine headaches. She received a disability rating from the U.S. Department of Veteran's Affairs for migraines. Under 42 U.S.C. §12102 (1) a disability is a "physical or mental impairment that substantially limits one or more major life activities of [an] individual." Under 42 U.S.C. §12102 (2) (B), major life activities includes the operation of a major bodily function, including but not limited to functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions. Migraines substantially limits the operation of Castillo's neurological and brain functions.

52. Second, Castillo was qualified for her job, and performed her job with the reasonable accommodation of intermittent leave when she had a migraine.

53. Third, her disability was a motivating reason for her termination and for discipline that United administered to her in August 2015.

54. At the end of the day, United simply terminated Castillo – a "qualified employee" under the ADA – because of her disability and/or requests for reasonable accommodations,[1] as in

[1] Here, Castillo is in fact disabled under the amended ADA. Even if she were not, she would still have a claim. This is so because every circuit court to address the issue has also held that it is unlawful to discharge an employee

*EEOC v. Chevron Phillips Chemical Co*., 570 F.3d 606, 621-26 (5th Cir. 2009) and *Cutrera v. Bd. of Supervisors of La. St. Univ*., 429 F.3d 108, 113 (5th Cir. 2005). There is abundant circumstantial and direct evidence of intentional disability discrimination.

**Jury Demanded**

55. Plaintiff demands a trial by jury.

**Prayer**

WHEREFORE, PREMISES CONSIDERED, Plaintiff asks that the court issue a summons for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendant for the following:

a. Actual damages including but not limited to pecuniary losses, non-pecuniary losses, loss of benefits, back-pay, front-pay (or reinstatement);

b. Liquidated damages under the FMLA;

c. Compensatory and Punitive damages under the ADA;

d. Prejudgment and postjudgment interest;

e. Court costs;

f. Attorneys' fees; and

g. All other relief to which Plaintiff is entitled.

---

for requesting an accommodation under the ADA, even if that employee is not disabled, so long as they reasonably believed that they were covered by the ADA. *See Chevron Phillips Chemical Co*., 570 F.3d at 620 n. 9.

Respectfully submitted,

OBERTI SULLIVAN LLP

By: s/ Edwin Sullivan
Edwin Sullivan
State Bar No. 24003024
S.D. Texas No. 24524
723 Main Street, Suite 340
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
ed@osattorneys.com – Email

ATTORNEY-IN-CHARGE FOR PLAINTIFF

OF COUNSEL:

OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

ATTORNEYS FOR PLAINTIFF